RECEIVED

2020 JUL 27 PM 1: 43

CLERK U.S. DIST. COURT
WEST. DIST. OF MO
KANSAS CITY, MO

Thomas R. McLean, MD and )
Third Millennium Consultants, LLC )
                   )
            Plaintiffs, )
                   )
          v. )    Civil Action No. 4: 20-cv-593- BP
                   )
Jeffery W. Bruce, Esq. and )
Does #1 to #50 )
                   )
            Defendants. )

## COMPLIANT SUPPLIMENT

1. Thomas R. McLean, MD is an individual who resides at 4970 Park, Shawnee KS, 66216; and Third
Millennium Consultants LLC is a single member Kansas limited liability company owned by Thomas
R. McLean.

2. Jeffery W. Bruce, is an individual who resides at 2107 E 195TH St., Belton, Mo. 64012 and Does #1
to #50 are any legal entities (including trusts) that were created by the Defendant or the Defendant's
wife (Margaret) wherein the Defendant or his wife can place assets;[1] or any legal entity under which
or through which the Defendant practices law.

## JURISDICTION

3. This Court has jurisdiction pursuant to 28 U.S.C. §1332; the parties are completely diverse; and more
than $75,000 is in controversy. Count III, *infra*, is for breach of contract. In 2015 and 2016, I paid the
Defendant $60,000 (Exhibit A) to appeal the Department of Veterans Affairs' final ruling that I was
to be removed from the Agency. The Defendant has never performed on this contract. The Defendant
is an attorney. The Defendant could clearly foresee that his failure to perform would necessitate that I
hire and pay a new attorney to represent me before the Agency and bring this action. Accordingly, the
attorney fee damages sought here would create damages that "naturally and proximately caused by
the commission of the breach and those damages that reasonably could have been contemplated by

---

[1] A search of the Missouri Secretary of State's webpage revealed that the Defendant has not created a legal entity for
his law practice; and there does not appear to be any other business entities in the Defendant's name.

the defendant at the time of the parties' agreement."[2] My compensation to being this action and to file with the OSC is $250/hour; the same nominal rate as the Defendant's hourly rate. I have more than 100 hours invested in this litigation.

4. This Court has personal jurisdiction over the Defendant because he resides within the district (2107 E 195TH St. Belton, Mo. 64012) and the Defendant regularly conducts business (the practice of law) from 2103 E 195TH St. Belton, Mo. 64012.

5. Venue is proper in this Judicial District because the Defendant resides in this District; and a "substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated"[3] occurred at the Defendant's place of business.

6. Defendant is subject to this Court's jurisdiction because he is being properly served by certified mail.

## FACTS

7. I was a staff surgeon at Eastern Kansas VA Healthcare System (EKVAHCS), Leavenworth, KS.

8. In 2012, two month after I testify that Deputy Chief of Staff, the Chief of Surgery and another surgeon (Dr. M) were causing actual harm to staff and veterans, the Deputy Chief of Staff (DCOS) chaired a secret *ex parte* Professional Standard Board (PSB) meeting to take evidence from the Chief of Surgery and Dr. M about my surgical competence. Not disclosed to the PSB was the fact that the DCOS and the two surgeons had significant conflicts of interest because of my prior testimony.

9. Based on the findings made by the PSB in ¶8, I was placed on Summary Suspension in May of 2012; and ultimately removed from the Department of Veterans Affairs final during the last quarter of 2014.

10. In 2015 and 2016, paid the Defendant $60,000 to appeal my removal to the Office of Special Counsel (OSC).

11. The Defendant has never performed on this contract.

12. Between 2017 and 2020, on multiple occasions, I expressed to the Defendant my concerns about the statute of limitations or latches terminating my ability to file an appeal with the OSC.

a. The Defendant repeatedly stated he was not worried, because a complaint to the OSC concerning retaliation arouse in equity. The Defendant asserted that he had unlimited time to file.

b. When I pointed out that equity's latches eventually gives way to stale evidence, the Defendant again stated that he was not concerned.

---

[2] *Ullrich v. CADCO*, 244 SW 3d 772, 779 (Mo. App. 2008) *citing St. John's Bank & Trust v. Intag,* 938 S.W.2d 627, 629 (Mo. App. 1997).
[3] 28 U.S.C. §1391.

13. Concerned over whether stale evidence would trump latches; in April of 2020, I obtain a second opinion regarding my ability to appeal to the OSC from a Washington DC law firm that handles Title 38 cases.

14. The above law firm stated that it is "virtually" impossible to get the OSC to review a whistle blowing complaint after three years.

15. On May 1, 2020, the Defendant unilaterally cut off all contact with me.

16. On June 15, 2020, I sent the Defendant a Demand Letter by certified mail.

17. The Defendant received the Demand Letter on June 19, 2020.

18. On July 10, 2020, the Defendant sent me a text message regarding his returning to the office.

19. As of today, July 24, 2020, the Defendant has neither returned the $60,000.00; nor my file.


### Count I: Professional Negligence for Failing to File with the Office of Special Counsel

20. By agreeing to represent me before the OSC, the Defendant entered into an attorney client relationship with me.

21. The Defendant breached the standard of care by failing to file with OSC in a timely manner.

22. But for the Defendant's negligence I would have prevailed before the OSC.

23. As consequence I have suffered lost wages, loss of prestige, I can no longer practice medicine, anxiety, and insomnia.

### Count II: Professional Negligence for Failing to File with the Merit Standard Protection Board

24. As an alternative to filing with the OSC, the Defendant could have filed my case with a Merit Standard Protection Board (MSPB).

25. MSPB hears appeal only when they are filed within 30 day of the final agency action.

26. The Defendant never filed with the MSBP.

27. By agreeing to represent me, the Defendant entered into an attorney client relationship with me.

28. The Defendant breached the standard of care by failing to file with MSPB in a timely manner.

29. But for the Defendant's negligence I would have prevailed before the MSPB.

30. As consequence I have suffered lost wages, loss of prestige, I can no longer practice medicine, anxiety, and insomnia.

## Count III: Breach of Contract

31. In Missouri an oral contract is enforceable. [4]

32. I made the Defendant an offer.

33. The Defendant's acceptance of the offer can be demonstrated by his conduct post contract formation.

34. The payment of $60,000.00 was valuable consideration.

35. The Defendant never performed on the contract.

## Count IV: Intentional Infliction of Emotional Distress

36. While a court is to determine whether a defendant's conduct is, in fact, outrageous; the test that a court is to use to make this determination is "one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, `Outrageous!'"[5]

37. If the average juror where to learn that a well-respected surgeon was denied his day in court (to clear his name) because his attorney failed to file a timely, than such a juror would scream "Outrageous." Normally, failure to file would be considered negligence.

38. But what makes the Defendant's failure to file reckless (and reinforces the outrageousness of the Defendant's conduct) is that the Defendant was on notice that his ability to file with the OSC was time limited.

39. The Defendant knew I passed the Bar; and yet every time I asked the Defendant about the ability to file with the OSC, (because the lapse of time was making the evidence stale), he dismissed my comments out-of-hand.

## Damages

40. Damages included, but are not limited to:

    a. Legal Damages for Counts #1 and #2

        i. Lost wages and Future earning

        ii. Lost pension return

        iii. Compensation for out-of-pocket medical expense

        iv. Future earnings

        v. Interest

        vi. Pain/suffering/reputational harm

---

[4] *Heritage Roofing, LLC v. Fischer*, 164 SW 3d 128, 133 (Mo. App. 2005) *citing Helmtec Industries v. Motorcycle Stuff,* 857 S.W.2d 334, 336 (Mo. App. 1993).
[5] *Pretsky v. Southwestern Bell Tel.*, 396 S.W.2d 566, 569 (Mo. 1965).

  b. Legal Damages for Counts #3

    i. Contract Value ($60,000.00) plus interest

    ii. Incidental and Consequential damages

  c. Legal Damages for Counts #4

    i. Pain

    ii. Suffering

    iii. Reputational Harm

  d. Punitive damages for Counts #1, #2 and #4

Respectfully submitted and filed with the Clerk of the Court on July 24, 2020, by

Thomas R. McLean, MD *pro se*

4970 Park
Shawnee, KS, 66216
913-525-5526
tmcllc1999@gmail.com