IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| THOMAS R. McLEAN, M.D. et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 20-0593-CV-W-BP |
| | ) | |
| JEFFREY W. BRUCE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER (1) DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND (2) GRANTING MOTION TO DISMISS COUNTS IV AND V FOR FAILURE TO STATE A CLAIM**

Plaintiff filed this case in July 2020, asserting claims arising from Defendant Jeffrey Bruce's obligations as Plaintiff's attorney. On June 28, 2021, Plaintiff filed his Amended Complaint, ("the FAC"). (Doc. 92.) Bruce has filed a motion asserting that Counts IV and V of the FAC fail to state a claim for which relief can be granted. Plaintiff opposed Bruce's motion and separately filed a motion seeking leave to file a Second Amended Complaint. For the reasons set forth below, Plaintiff's motion, (Doc. 141), is **DENIED**, Bruce's motion, (Doc. 133), is **GRANTED**, and Counts IV and V are dismissed.

## I. BACKGROUND

The two motions – the Motion to Dismiss and the Motion for Leave to File Second Amended Complaint – are related, so they are being addressed together. However, resolution of the parties' arguments requires an understanding of the case's procedural history, details regarding Counts IV and V, and the differences between FAC and the Proposed Second Amended Complaint, ("the SAC").

## A. Procedural History

As stated earlier, the case was filed in July 2020, and the Court's Scheduling Order and Trial Order established a deadline of June 1, 2021, for filing motions to amend the pleadings. (Doc. 61, ¶ 4.) Bruce sought a brief, six-day extension of the deadline, (Doc. 71), which Plaintiff opposed, (Doc. 73); the Court granted the motion over Plaintiff's opposition and extended the deadline for filing motions to amend the pleadings to June 9, 2021. (Doc. 76.)

Despite opposing the extension, on June 9 Plaintiff sought leave to file an Amended Complaint, (Doc. 78); on the same day, Bruce sought leave to file an Amended Answer, (Doc. 79), which Plaintiff opposed, (Doc. 87). Bruce did not respond to Plaintiff's request to file an Amended Complaint, so the Court granted Plaintiff's motion. (Doc. 89.) Once Plaintiff filed the Amended Complaint, (Doc. 92), the Court found Defendant's motion to file an Amended Answer to be moot because with the filing of an Amended Complaint Bruce automatically had a right to file a new Answer. (Doc. 94.)

Until this time, Plaintiff and Bruce had each been representing themselves. Bruce retained counsel on August 9, (Doc. 118), and three days later counsel filed an Answer to the Amended Complaint, (Doc. 123); the Answer includes several defenses, including one stating that the "First Amended Complaint fails to state a claim upon which relief may be granted." (Doc. 123, ¶ 51.)

On August 26, Bruce (through counsel) filed a motion to dismiss Counts IV and V for failure to state a claim. On September 7, Plaintiff filed his motion seeking leave to file the SAC. Two days later, Plaintiff responded to the Motion to Dismiss, contending (1) that it was untimely and (2) that Counts IV and V stated claims for relief.

## B. The Two Complaints, and Counts IV and V

Both the FAC and the SAC arise from similar factual allegations. Both allege that Plaintiff was a staff surgeon for the Veterans' Administration, ("the VA"), that he was suspended in May of 2012, and that he was ultimately removed from his position in December 2014. Plaintiff retained Bruce, then a practicing attorney, to represent him during this process and to challenge the decision removing him from his position. However, after Plaintiff's removal in December 2014 Bruce allegedly did not file a timely challenge with either the Office of Special Counsel, ("the OSC"), or the Merit Systems Protection Board, ("the MSPB").

The FAC asserts five claims. Counts I and II assert malpractice claims based on Bruce's failure to timely seek relief from either the OSC or the MSPB. Count III asserts a claim for breach of contract. These three claims were previously asserted in Plaintiff's original Complaint. Count IV alleges a claim for intentional infliction of emotional distress, ("IIED"), based on these same allegations about Bruce's failure to appeal the adverse decision to either the OSC or the MSPB. This claim was also in Plaintiff's original Complaint. The FAC added Count V, which asserts a claim for defamation based on statements Bruce included in written filings in this case before he retained counsel.

The SAC provides more details regarding Plaintiff's employment, suspension, and removal, Bruce's involvement in those proceedings, and Bruce's failure to pursue further review of the removal. It also adds allegations that Bruce filed an EEOC case without Plaintiff's permission. However, the SAC asserts seven claims for relief; in so doing, it asserts claims that were not included in the FAC and omits some claims that were asserted in the FAC. The seven claims are:

Count I          Malpractice, for failing to file a whistleblower complaint based on events that occurred in 2010,

Count II         Malpractice, for failing to file a whistleblower complaint based on events that occurred in 2012,

Count III        Malpractice, for failing to secure a copy of a transcript from an August 2013 hearing before the Disciplinary Advisor Board, ("the DAB"),

Count IV         Malpractice, for failing to seek review of the removal decision before the MSPB,

Count V          Breach of Contract,

Count VI         IIED, and

Count VIII       Defamation.

## II.  DISCUSSION

Bruce seeks dismissal of the IIED and defamation claims, and Plaintiff seeks leave to file the SAC. Both parties oppose the other's motions. The issues are interrelated; the Court deems it appropriate to begin by discussing Plaintiff's motion and then discussing the viability of the IIED and defamation claims.

### A.  Plaintiff's Motion to File Second Amended Complaint

Analyzing Plaintiff's motion requires the Court to ascertain the basis for his request. In seeking leave to file the SAC, (*see* Doc. 141, p. 1), Plaintiff relies on Rule 15(a)(1)(B). That rule permits a party to amend a pleading once as a matter of course "21 days after service of a responsive pleading or 21 days after service of a [motion to dismiss], whichever is earlier." FED. R. CIV. P. 15(a)(1)(B). The purpose for allowing this amendment is to permit a party to rectify

4

Case 4:20-cv-00593-BP   Document 150   Filed 10/13/21   Page 4 of 13

issues raised about the complaint in the responsive pleading (i.e., the answer) or the motion to dismiss. The Court concludes that Rule 15(a)(1)(B) does not justify granting Plaintiff's motion.

Bruce filed his Answer to the FAC on August 12 – and Plaintiff sought leave to file the SAC more than twenty-one days after that date. Thus, Plaintiff cannot rely on Rule 15(a)(1)(B) as grounds to permit him to rectify deficiencies identified by Bruce's Answer. Plaintiff did seek leave to amend within twenty-one days after Bruce sought dismissal of the IIED and defamation claims, but to the extent that Plaintiff intends the SAC to rectify errors identified in the Motion to Dismiss, the SAC goes further by advancing completely new and unrelated claims. Specifically, the new claims based on Bruce's failures to file whistleblower complaints (Counts I and II in the SAC) or to secure a copy of the transcript from the DAB hearing (Count III in the SAC) have nothing to do with the IIED or defamation claims, so the attempt to add these new claims cannot be justified by Bruce's filing of the Motion to Dismiss. Rule 15(b)(1)(B) might permit Plaintiff's proposed amendments to the IIED and defamation claims, but as will be discussed below in Part II(C)(1), the SAC's allegations do not alter the Court's conclusion that those two claims must be dismissed.[1]

In his Reply Suggestions, (Doc. 149, pp. 8-9), Plaintiff seems to also justify his request to file the SAC by relying on Rule 15(a)(2), which directs that the Court "should freely give leave" to amend the pleadings "when justice so requires." However, "[a] district court may appropriately deny leave to amend where there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Moses.com Sec., Inc. v. Comprehensive*

---

[1] As will be explained, a possible resolution of Plaintiff's argument that the Motion to Dismiss is untimely is to treat it as a Motion for Judgment on the Pleadings under Rule 12(c) – and Rule 15(b)(1)(B) does not apply when a Rule 12(c) motion is filed.

5

*Software Sys., Inc.*, 406 F.3d 1053, 1065 (8th Cir. 2005) (quotations omitted); *see also Enervations, Inc. v. Minnesota Mining & Mfg. Co.*, 380 F.3d 1066, 1068-69 (8th Cir. 2004). The Scheduling Order's deadline of June 9, 2021, for amending the pleadings further establishes that Plaintiff's diligence is an important issue to be considered. Rule 16(b)(4) states that good cause is required to amend a Scheduling Order, and the Court of Appeals has emphasized that there is rarely good cause if the party requesting the scheduling change has not been diligent. *E.g.*, *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716-17 (8th Cir. 2008); *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001).

Plaintiff contends that he did not know the full extent of Bruce's failures until he received certain discovery responses in September 2021, so the Court should allow him more time to amend his pleadings. Setting aside the fact that this argument was not presented until Plaintiff's Reply Suggestions, the Court is not persuaded. This suit started with Plaintiff's allegations about Bruce's failure to contest Plaintiff's removal from his position in December 2014. He seeks to add claims about Bruce's failure to file unrelated claims on Plaintiff's behalf based on events that occurred before then – in 2010 and 2012. The Court finds it hard to believe that Plaintiff did not know until September 2021 that Bruce failed to file the whistleblower claims in 2010 and 2012. With respect to Count III's allegation that Bruce was negligent for failing to obtain a transcript, this "claim" appears to be a specific piece of evidence establishing the claims asserted in the FAC, and thus serves no purpose as an independent claim.[2] For these reasons, the Court finds that there is not good cause under Rule 15(a) to permit the SAC to be filed.

---

[2] Similarly, if Plaintiff is arguing that Bruce should have challenged Plaintiff's removal from his position by arguing that the removal was retaliation for events in in 2010 and 2012, this would also be a specific fact related to Plaintiff's already-asserted malpractice claims and has no function as an independent claim. Having alleged that Bruce failed to pursue further action in December 2014, there is no need to assert, as a separate claim, each independent action Bruce failed to take as part of his failure to appeal the removal.

## B. Timeliness of the Motion to Dismiss

Before addressing the legal viability of the IEED and defamation claims, the Court must address Plaintiff's argument that Bruce's Motion to Dismiss is untimely. Plaintiff relies on Rule 12(b), which lists defenses that may asserted in the responsive pleading or by motion; among them is the defense that one or more claims fails to state a claim for which relief can be granted. Rule 12(b) then provides that "[a] motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed," which suggests that Bruce's filing of an Answer deprived him of the opportunity to rely on Rule 12(b)(6) to challenge the legal viability of the IIED and defamation claims. Indeed, the Eighth Circuit has recently observed that "[a] leading treatise has opined that '[a] strict interpretation of the timing provision's language' means that a district court *must* deny a motion to dismiss . . . after the defendant files an answer." *Kaliannan v. Liang*, 2 F.4th 727, 735 (8th Cir. 2021) (citing 5C Miller, Kane & Spencer, FEDERAL PRACTICE & PROCEDURE CIVIL § 1361). However, the Eighth Circuit did not adopt this strict interpretation, and the same treatise it cited goes on to say (in the very next sentence) that "federal courts have allowed untimely motions if the defense has been previously included in the answer." While Bruce filed an Answer before filing the Motion to Dismiss, the Answer included (as an affirmative defense) an assertion that the FAC failed to state a claim for which relief could be granted. (Doc. 123, ¶ 51.)

Regardless, the Eighth Circuit has previously instructed what should happen when a motion to dismiss is filed after the Answer:

> Technically . . . a Rule 12(b)(6) motion cannot be filed after an answer has been submitted. *See* Fed.R.Civ.P. 12(b). But since Rule 12(h)(2) provides that "[a] defense of failure to state a claim upon which relief can be granted" may be advanced in a motion for judgment on the pleadings under Rule 12(c), we will treat the [motion to dismiss] as if it had been styled a 12(c) motion. This distinction is

7

purely formal, because we review this 12(c) motion under the standard that governs 12(b)(6) motions.

*Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990) (citations omitted).[3]

Thus, because the same standard governs motions filed under Rule 12(b)(6) and Rule 12(c), and because a Rule 12(c) motion can be filed after an Answer is filed so long as the motion is filed early enough that it does not delay the trial, the Court can consider Bruce's arguments.

### C. Bruce's Motion

As indicated above, a motion for judgment on the pleadings is evaluated under the same standard that is used to consider a motion to dismiss for failure to state a claim under Rule 12(b)(6). *E.g., Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012). Under Rule 12(b)(6), the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff[ ]." *Stodghill v. Wellston School Dist.*, 512 F.3d 472, 476 (8th Cir. 2008); *see also Alexander v. Hedback*, 718 F.3d 762, 765 (8th Cir. 2013).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citations omitted). A claim is facially plausible if it allows the reasonable inference that the defendant is liable for the conduct alleged. *E.g., Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Horras v. American Capital Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013). In making this evaluation, the Court is limited

---

[3] It is worth noting that Rule 12(c) specifies that a motion for judgment on the pleadings must be filed "[a]fter the pleadings are closed – but early enough not to delay trial." The Court further holds that Bruce's motion is timely under this standard.

to a review of the Complaint, exhibits attached to the Complaint, and materials necessarily embraced by the Complaint. *E.g., Mattes v. ABC Plastics, Inc.,* 323 F.3d 695, 697 n.4 (8th Cir. 2003). The Court can also consider matters that are amenable to judicial notice. *E.g., Podraza v. Whiting,* 790 F.3d 828, 833 (8th Cir. 2015).

### *1. Count IV – IIED*

"To state a claim for intentional infliction of emotional distress, a plaintiff must plead extreme and outrageous conduct by a defendant who intentionally or recklessly causes severe emotional distress that results in bodily harm." *Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. 1997). In addition, "[t]he conduct must be intended *only* to cause extreme emotional distress to the victim." *Id*. (quotation omitted; emphasis supplied). Bruce contends that several of these elements cannot be satisfied. The Court agrees that Plaintiff has not described extreme and outrageous conduct on Bruce's part, making it unnecessary to consider the other elements (including the requirement that Plaintiff allege facts demonstrating that Bruce's sole intent was to cause Plaintiff extreme emotional distress).

To support a claim for IIED, the challenged "conduct must have been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*. (quotation omitted). Under Missouri law, it is the court's role to determine "whether the defendant's conduct may be reasonably regarded as so extreme and outrageous as to permit recovery [but] Missouri case law reveals very few factual scenarios sufficient to support a claim for intentional infliction of emotional distress. . . . [I]t is a rare occurrence when a defendant's conduct is sufficiently extreme and outrageous to warrant recovery." *Gillis v. Principia Corp.*, 832 F.3d 865, 874-75 (8th Cir. 2016) (cleaned up).

Plaintiff argues that Bruce's conduct was outrageous in that he was paid $60,000 to file Plaintiff's appeal and did not do so despite being warned that the limitation period was expiring. (Doc. 142-1, p. 2.) The Court disagrees; while these assertions might support a breach of contract or malpractice claim, the conduct described is not so atrocious or contrary to the norms of civilized society that an IIED claim can be maintained. In making this decision, the Court notes examples of much more severe conduct that has been held insufficient. For instance, in *Gillis* the Eighth Circuit surveyed Missouri cases and observed that the following conduct would not support an IIED claim: (1) suffering insults, indignities, and threats, (2) being ridiculed and threatened with termination, and (3) being harassed and threatened with termination. *Gillis*, 832 F.3d at 875 (citing cases). In *Gibson v. Hummel*, 688 S.W.2d 4, 7 (Mo. Ct. App. 1985), the Missouri Court of Appeals also surveyed Missouri cases and observed that conduct insufficient to support an IIED claim included: (1) using a false statement to gain access to someone's house and (2) attempting to settle a lawsuit for wrongful death while the other party was in mourning over the death. *Gibson* itself involved a claim that the plaintiff's employer required her to take a polygraph and then fired her based on the results; that too was held insufficient to support an IIED claim.

The Court's conclusion would not be altered by the SAC. The SAC provides more details about Bruce's failure to seek review of Plaintiff's removal and the unauthorized EEOC filing, (Doc. 11, p. 16, ¶ 97(c)), but it does not demonstrate anything outrageous. This is not to say that breach of contract and malpractice are not actionable wrongs; however, not everything that is actionable is outrageous enough to give rise to an IIED claim. Neither the FAC or the SAC describe conduct that is so outrageous and extreme that it goes "beyond all bounds of decency" or can be "regarded as atrocious, and utterly intolerable in a civilized community."

As a matter of law, Plaintiff's allegations that Bruce breached a contract and committed malpractice are insufficient to support a claim for IIED. Accordingly, Count IV must be dismissed.

### 2. Count V – Defamation

Bruce seeks dismissal of the defamation claim, arguing that his statements made in filings in this case are privileged and cannot form the basis for a defamation claim. Plaintiff argues that the privilege does not apply because the statements in question were "gratuitous and irrelevant" to the litigation. As discussed below, the Court agrees with Bruce.

"Missouri law provides 'that statements made during proceedings of a judicial or quasi-judicial body are absolutely privileged if they are relevant to the issues before the body.'" *Wunsch v. Sun Life Assur. Co. of Canada,* 92 S.W.3d 146, 156 (Mo. Ct. App. 2002) (quoting *Li v. Metro. Life Ins. Co.*, 955 S.W.2d 799, 803 (Mo. Ct. App. 1997) and citing *Henry v. Halliburton,* 690 S.W.2d 775, 780 (Mo. 1985) (en banc)). "Statements that are absolutely privileged are not actionable as a matter of law." *Riley v. Riley*, 340 S.W.3d 334, 338 (Mo. Ct. App. 2011).

Plaintiff does not contest that the statements at issue were made in documents filed with the Court in this lawsuit. Instead, he argues that the statements in question are not privileged because they were gratuitous, irrelevant, and designed to impugn Plaintiff. (Doc. 142-1, pp. 5-7.) The Court disagrees.

The FAC (and the SAC) identify the following statements as the basis for the defamation claim:

1. In opposing Plaintiff's attempt to file an Amended Complaint that asserted claims against Bruce's wife (who was not a lawyer and did not enter a contract with Plaintiff), Bruce argued that Plaintiff was "attempting to harass Defendant and his wife to extort a settlement." (Doc. 55, p. 6.)

2. The parties were unable to agree on a jointly proposed Scheduling Order, so they each submitted one. In Bruce's Proposed Scheduling Order, under the heading for Protective Orders, Bruce "request[ed] a telephone conference with the Court and a protective order to address the issue of Plaintiff's continuing personal, slanderous and irrelevant attacks against Defendant . . . based on false assumptions and speculation and conjecture." (Doc. 60, ¶ 8(b).)

3. As stated earlier, Bruce sought, and Plaintiff opposed, a six-day extension of the deadline to seek leave to amend the pleadings. Plaintiff opposed the extension, claiming that he would be prejudiced. In his Reply Suggestions, Bruce characterized Plaintiff's assertion of prejudice as "ludicrous." (Doc. 75, p. 1.)

4. In that same document, Bruce described Plaintiff's opposition as "a continuation of Plaintiff's pattern of knee-jerk opposition to anything that Defendant proposes . . . ." (Doc. 75, p. 2.)[4]

"Missouri courts have not imposed a strict relevancy test in determining whether statements made in the judicial or quasi-judicial process are entitled to absolute immunity, rather, courts provide for absolute immunity if the statement made during the course of a proceeding has some relation to the proceeding." *Li v. Metro. Life Ins. Co.*, 955 S.W.2d 799, 804 (Mo. Ct. App. 1997); *see also Riley*, 340 S.W.3d at 339. All the comments Plaintiff relies on have "some relation to" the issues then pending before the Court and are therefore privileged.

### III. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Leave to File Second Amended Complaint, (Doc. 142), is **DENIED**, and the First Amended Complaint, (Doc. 92), remains

---

[4] The Court observes that Plaintiff has opposed several extensions that would ordinarily be regarded as routine.

Plaintiff's operative pleading. Bruce's Motion to Dismiss, (Doc. 133), is **GRANTED**, and Defendant Jeffrey Bruce is granted judgment on Counts IV and V.

**IT IS SO ORDERED.**

DATE: October 13, 2021

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
UNITED STATES DISTRICT COURT