UNITED STATES DISTRICT COURT
for the
WESTERN DISTRICT OF MISSOURI

Thomas R. McLean, MD )
)
          Plaintiff, )
)
v. )
) Civil Action No. #4:20-CV-593-BP
Margaret Bruce, as the Personal )
Representative for the Estate of Jeffrey Bruce, )
)
          Defendant. )

## PLAINTIFF'S MEMORANDUM ON THE LAW CONCERNING COUNT I OF THE AMENDED COMPLAINT

COMES NOW Thomas R McLean, MD, as the *per se* Plaintiff, to file this Memorandum in support of his Motion on Summary Judgment on the liability issues in Count I of the Amended Complaint. Based on the incontrovertible facts (being filed concurrently), Dr. McLean is entitled to Summary Judgment (SJ) on the liability issues associated with Counts I of the Amended Complaint.

### Count I

1.     Count I of the Amended Complaint asserts that if Mr. Bruce had filed a timely appeal of Dr. McLean's 2014 removal from the Department of Veterans Affairs ("VA") to the Office of Special Counsel ("OSC"), Dr. McLean would have prevailed before the OSC. The need for Dr. McLean to prevail before the OSC in this action is referred to the "case-within-the-case."

a.     At all times, Dr. McLean has asserted that his 2014 removal from the VA was wrongful because it was taken in retaliation for Dr. McLean's whistleblowing activities (filing his 2010 OSC complaint and his 2012 Malik AIB testimony).

b.     Retaliation against a whistleblower is a prohibited personal practice. 5 U.S.C. § 2302(b)(8); *see also* WHISTLEBLOWER PROTECTION ENHANCEMENT ACT OF 2012, Pub. L. 112-199 ("WPEA").

c.  Under the WPEA and Merit System Protection Board's ("MSPB's") case law, retaliation for whistleblowing is an affirmative defense to any agency's covered personnel action.[1] The removal or an appointment of a government employee is a covered personnel action. 5 U.S.C. § 2302(a).

d.  Normally, when the OSC takes on a whistleblower case, it conducts an investigation.[2] If the OSC's investigation reveals that the complaint has merit, the OSC files a whistleblower complaint (on behalf of the claimant) with the appropriate MSPB.[3] If the OSC declines to investigate or declines to file a claim with the appropriate MSPB on a claimant's behalf, the OSC *may* issue the claimant an Individual Right of Action ("IRA").[4] (The Plaintiff is unaware of any authority that mandates that the OSC must issue an IRA when it declines to investigate or file a whistleblower complaint.) An IRA allows the claimant to take his whistleblower complaint directly to the MSPB.[5]

e.  Regardless of whether the OSC brings a whistleblower retaliation claim to the MSPB or the claimant brings a whistleblower retaliation claim to the MSPB, it is the MSPB who adjudicates whistleblower retaliation claims. Exhibit 10(a) page 16 line 24 to page 17 line 4.

f.  Accordingly, for Dr. McLean to demonstrate that he would have prevailed before OSC, Dr. McLean must demonstrate that if the Defendant had filed a timely complaint with the OSC, the appropriate MSPB would have ruled that Dr. McLean's 2011 Focused Professional Practice Evaluation ("FPPE") appointment or his 2014 removal were taken in retaliation for his whistleblowing activities.

2.  For an attorney to be held liable for legal malpractice, the plaintiff must demonstrate in his "case-in-chief," by the preponderance of evidence, that there was (1) an attorney-client relationship; (2) negligence or *breach of contract by the defendant*;[6] and (3) the defendant's breach was the proximate cause of the plaintiff's damages. *Donahue v. Shughart, Thomson & Kilroy, P.C.*, 900 S.W.2d 624, 626 (Mo. banc 1995).

---

[1] Whistleblower Protection Enhancement Act of 2012 (WPEA); MSPB: *Prohibited Personnel Practice 8: Whistleblower Protection*; https://www.mspb.gov/ppp/8ppp.htm.

[2] Honorable Carolyn N. Lerner and Jason M. Zuckerman: *The U.S. Office of Special Counsel's Role in Protecting Whistleblowers and Serving as a Safe Channel for Government Employees to Disclose Wrongdoing*; page 2-5; available at:
https://osc.gov/Documents/PPP/OSC%27s%20Role/OSC%E2%80%99s%20Role%20in%20Protecting%20Whistleblowers%20and%20Serving%20as%20a%20Safe%20Channel%20for%20Government%20Employees%20to%20Disclose%20Wrongdoing.pdf.

[3] Id.

[4] Id.

[5] Id.

[6] Emphasis added.

3. Mr. Bruce admitted to the existence of an attorney-client relationship during the years of 2015 to 2020. Exhibits 3 and 4 (at Q. 7-13) respectfully.[7]

4. Breach of the Standard of Care:

a. In Missouri, the standard of care applicable to a claimant's situation or circumstance varies with the type of relationship the plaintiff had with the wrongdoer. *Davidson v. Otis Elevator Co.*, 811 S.W.2d 802 (MO APP 1991). The MISSOURI APPROVED JURY INSTRUCTIONS ("MAI") divide the applicable standards of care into three categories; (1) ordinary care, (2) the highest degree of care, and (3) failure to use the degree of ordinary skill and learning accepted in a certain profession. *See* MAI 11.02 I, 11.03, 11.05, 11.06, and 11.07.

b. The Plaintiff could not find a Missouri legal malpractice case that specifically and explicitly identified the level of care an attorney owes to the client.

c. However, the Missouri Supreme Court has opined that the ordinary care standard, (MAI 11.06), is the proper jury instruction for professional negligence. Missouri Supreme Court, IN RE: REVISIONS TO MAI-CIVIL TABLE OF INSTRUCTIONS, October 31, 2006; *available at* https://www.courts.mo.gov/file.jsp?id=4614.

d. Ordinary care means "that degree of care than an ordinarily careful person would use under same or similar circumstances." *Lopez v. Three Rivers Elec. Co-op.*, 26 SW 3d 151, 158 (Mo 2000) *citing* MAI 11.05.

e. The Defendant's breach of the ordinary care standard can be demonstrated by:

i. <u>Lay standard</u>:

1. In malpractice actions, an expert witness is not required to demonstrate a breach of the standard of care when the defendant's conduct that constitutes negligence is within "the common experience and knowledge of laypersons." *Stalcup v. Orthotic & Prosthetic Lab, Inc.*, 989 S.W.2d 654, 657 (Mo. App. E.D. 1999).

2. During a four-year period (2016-2020), the Defendant -without offering any excuses - admitted that he never filed a OSC claim on Dr. McLean's behalf (Exhibit 7) despite Mr. Bruce repeatedly reassuring Dr. McLean that he was going to file (Exhibit 2).

3. It is within the common experience of any jury to find that an attorney who fails to file a claim on behalf of his client during a four-year period -all the while assuring the client that he would be

---

[7] The Exhibit numbers used in this document refer to the Exhibit numbers in the Statement of Incontrovertible Facts being filed concurrently; and all electronic signatures are authenticated at Exhibit 0.

filing soon -had failed to provide his client with the ordinary care that would be expected of an attorney.

ii.  *Per se* standard:

1. The OSC does not need to consider a whistleblower retaliation claimed filed more than three years after an Agency's covered personnel action. 5 U.S.C. §1214(a)(6)(A)(iii).

2. Because Dr. McLean's removal was final in December 2014, the Defendant knew that beginning in 2018, the OSC statutorily did not have to consider Dr. McLean's claim.

3. Indeed, when the OSC did consider Dr. McLean's whistleblower complaint after 2018, the OSC decline to investigate his complaint based on latches. Exhibit 12.

4. For all practical purposes, Mr. Bruce blew, what was tantamount to, an OSC statute of limitation.

iii.  Expert Witness Standard:

1. In 2022, Mr. Eric Pines, who serves as Dr. McLean's legal expert witness, declared that the Defendant's failure to file a claim with the OSC for more than four years was a breach of the standard of care. Exhibit 11; *see also* Exhibit 10(a) at page 25 lines 14 to 16.

2. Because the Defendant did not retain a legal expert witness, Mr. Pines' testimony is uncontroverted.

3. The law firm of Passman and Kaplan has opined that Mr. Bruce breached the standard of care. Exhibit 6.

5. Proximal Causation:

a. The "well-established Missouri test of direct or proximate cause is whether the defendant's conduct was a substantial factor in producing the plaintiff's injuries. MAI 19.01, 25.04 (3d ed. 1981); *Giles v. Moundridge Milling Co.*, 173 S.W.2d 745, 750 (1943); *Richardson v. Volkswagenwerk, AG*, 552 F. Supp. 73, 82 (WD Mo. 1982). "[T]he test for proximate cause is not whether a reasonably prudent person would have foreseen the particular injury, ... It is only necessary that the party charged knew or should have known there was an appreciable chance some injury would result." *Buckler v. Johnson Controls*, No. 5:13-CV-06142-NKL (WD MO 2014) *quoting Robinson v. Mo. State Highway & Transp. Comm'n*, 24 S.W.3d 67, 78 (Mo. Ct. App. 2000).

b. Dr. McLean has sustained damages in this case. *Infra* ¶11. "The" reason Dr. McLean sustained these damages was because of the Defendant failed to file a claim with the OSC. "The" cause for damages certainly satisfies the "substantial" cause of MAI 19.01 and 25.04 (3d ed. 1981).

c.  Mr. Bruce, who practiced law for close to three decades, is the party to be charged. When a licensed attorney fails to file a claim during a four-year period or blows a (functional) statute of limitation (*e.g.*, 5 U.S.C. §1214(a)(6)(A)(iii)), that attorney knows or should have known that his or her failure to act would be associated with an "appreciable chance some injury" would befall his or her client. *Buckler*, 5:13-CV-06142-NKL (WD MO 2014). As a licensed attorney, the Defendant knew or should have known that his failure to file a claim with the OSC would result in an "appreciable chance some injury" would befall Dr. McLean. When the Defendant committed suicide the day before he was to be deposed in this case, his conduct demonstrated that he knew he had harmed Dr. McLean.

d.  The OSC declined to investigated Dr. McLean's complaint based on latches. Exhibit 12. The Defendant's failure to file a claim on Dr. McLean's behalf for four years was clearly a substantial factor in the OSC's decision not investigated Dr. McLean's complaint because of latches. *Giles*, 351 Mo. at 173; *see also* 5 U.S.C. §1214(a)(6)(A)(iii).

6.  In a legal malpractice case, the plaintiff must also demonstrate that he would have prevailed in the case-within-the case by the preponderance of the evidence. Here, the case-within-the-case concerns OSC/MSPB proceeding. Accordingly, Dr. McLean must demonstrate that if the Defendant had filed a timely complaint with the OSC, it is more probable than not, that the Denver MSPB would have ultimate ruled in Dr. McLean's favor.[8] To determine whether Dr. McLean would have prevailed before the OSC/MSPB, it is necessary to review how a whistleblower retaliation case is handled by a MSPB.

a.  To demonstrate whistleblower retaliation, the claimant must prove, by the preponderance of the evidence, a *prima facie* case ("PFC") of whistleblower retaliation. WHISTLEBLOWER PROTECTION ENHANCEMENT ACT OF 2012 (WPEA), Pub. L. 112-199. The elements of a PFC are: (1) the employee made a protected disclosure; (2) for which the agency took a covered personnel action; such that the (3) agency's decision maker had knowledge of the protected disclosure, and (4) the protected disclosure was a contributing factor to the Agency's decision to take the covered personnel action. Id. Whether a protected disclosure was a contributing factor to the Agency's decision to take a covered action is usually determined by the knowledge-timing test. MSPB: *Whistleblower Protections for Federal Employees* (2010) at FN 127; https://www.mspb.gov/studies/studies/Whistleblower_Protections_for_Federal_Employees_557972.pdf. This test requires that the interval between the protected disclosure and the covered personnel action

---

[8] Dr. McLean does not have to prove that the OSC would actually finding in his favor.

be sufficiently short that a reasonable person could conclude that the protected disclosure could have been a contributing factor to the agency's decision to take a covered action. A twenty-four months interval between the protected disclosure and the covered personnel action has been held to satisfy the knowledge-timing test; especially when the agency engaged in a continuum of related performance-based actions stemming from the protected disclosure. *Pridgen v OMB*, 2022 MSPB 31, ¶ 63; *Agoranos v. Dep't of Justice*, 119 M.S.P.R. 498 (2013).

b. If the Whistleblower establishes a PFC, the burden shift to the agency to rebut the presumption of retaliation by clear and convincing evidence. An agency rebuts the presumption of retaliation by applying a *Carr* Factor analysis. *Carr* v. *Social Security* Administration, 185 F.3d 1318, 1323 (Fed. Cir. 1999)(the *Carr* Factors are the strength of the Agency's case, retaliatory motive, and whether the agency treated the whistleblower similar to similarly-situated non-whistleblowers). The Agency's failure to rebut any of the *Carr* Factors is fatal. *Smith v. General Services Admin.*, 930 F. 3d 1359, 1355 (2019); *Siler v. Environmental Protection Agency*, No. 2017-2446 Court of Appeals, Federal Circuit 2018; *Miller v. Dep't of Justice*, 842 F.3d 1252, 1262 (Fed. Cir. 2016); *Sullivan v. Dep't of the Navy*, 720 F.2d 1266, 1278 (Fed. Cir. 1983).

7. Dr. McLean has a pending whistleblower retaliation claim before the Denver MSPB.

8. The Denver MSPB is to decide Dr. McLean's whistleblower retaliation claim against the Agency. This Court only needs to decide whether it is more probable than not that if the Defendant had filed a timely OSC compliant, the Denver MSPB would have ruled in Dr. McLean's favor. Dr. McLean does not have to prove that he would have actually prevailed before the MSPB. Thus, the calculus the MSPB and this Court are to apply are not the same things.

9. To be consistent, and to assist the Court's review of Dr. McLean's whistleblower case, I have obtained certified copies of all the filings in the Denver MSPB's docket. Exhibit 14.[9] Exhibits 15 and 16 (respectively) are Dr. McLean's and the Agency's MSPB Closing Briefs; and Exhibits 17 and 18 (respectively) are Dr. McLean's and the Agency's sur-replies. After the sur-replies where filed, the MSPB's administrative record was closed. Collectively, the Court's review of these documents will demonstrate that Dr. McLean establish two PFCs (based on his 2010 OSC complaint and his Malik AIB testimony); and it is not possible for the Agency to rebut the presumption of retaliation by clear and convincing evidence for either of the two protected disclosures.

10. For the Court's convenience, I provide the following executive summary of Exhibits 15-18:

---

[9] Three of the docket filings in this case concerned housekeeping issues and have not been produced here.

a. <u>The Agency's Closing Brief (Exhibit 16):</u>

i. The theme of this document is that the Agency's appointment of Dr. McLean to an FPPE and its removed of Dr. McLean were "by-the-book;" and that Dr. McLean received due process because he was judged by his peers. Exhibit 16 page 5 of 44.

ii. The Agency requested that the ALJ revisit his jurisdiction ruling. Exhibit 16 at page 21 of 44. This request is a tacit admission that the Agency that it knew that its arguments that Dr. McLean could not establish and PFC were untrue. (How Dr. McLean established two PFCs with virtual certainty is discussed *infra* at ¶10(b).)

iii. The Agency erroneously conflated Dr. McLean's abandonment of his 2010 OSC complaint with his ability to use his 2010 OSC complaint as an element in a whistleblower case. Exhibit 16 at page 22 of 44. These are not the same thing. Dr. McLean did abandon his 2010 OSC complaint; but this does not mean that the 2010 OSC complaint could not be used as the "protected disclosure" element in whistleblower retaliation complaint.

iv. The Agency stated that the "Appellant can only speculate on EKHCS management officials had such awareness" when these officials appointed Dr. McLean to FPPE. Exhibit 16 at 25 of 44. As discussed *infra* at ¶10(b)(i)(5)(a), Dr. McLean produced documentary proof that Director McKee had both actual and constructive knowledge of Dr. McLean's OSC complaint before she appointed Dr. McLean to an FPPE.

v. Nowhere in Exhibit 16 did the Agency challenge a finding that Director Klopfer had knowledge of Dr. McLean's protective disclosure before he issued his removal orders for Dr. McLean. *Infra* at ¶10(c)(i)(5).

vi. When the Agency discussed the strength of its case (Exhibit 16 at 30 of 44 to 34 of 44), the Agency failed to mention that it fabricated evidence to appoint Dr. McLean to an FPPE or the COIs of those who judged Dr. McLean. *See infra*.

vii. With respect to Dr. McLean's OSC complaint, the Agency only claimed -*arguendo and without factual evidence*- that it lacked retaliatory motive (Id. at 35 of 44). As discussed in detail below, the Agency failed to demonstrate by clear and convincing evidence that it lacked retaliatory motive or treated similarly situated non-whistleblower similar to the way it treated Dr. McLean.[10]

---

[10] The Agency admitted that it had "no [true] comparator information." Exhibit 16 at page 37 of 44.

viii. The Agency claimed that "Appellant presented no evidence supporting his apparent belief either of the proctors performed poor patient care." Exhibit 16 at page 36 of 44. This simply is not true. During his Malik AIB testimony (Exhibits 15 JJ and KK[11]), Dr. McLean identified the patients who sustain substantial and specific harm at the hands of Drs. Van Landingham and Montecino; and Dr. McLean identified how these patients were harmed.

i. The Agency claimed:

"There is overwhelming evidence to support the Agency's decision to summarily suspend Appellant's clinical privileges. Notably, the [2014-DAB] held a fair hearing, including allowing Appellant to present testimonial and documentary evidence, as well as cross-examine witnesses."

ii. Again, this statement simply is not true. The 2014 DAB did not allow Dr. McLean to raise issues concerning the Agency's COIs or evidence of retaliation. Exhibit 15 at 50 of 107 to 51 of 107; *see also* the 2014 DAB Findings (Exhibit 15 FFF)(demonstrating the DAB did not consider the Agency's COI's or retaliatory motive).

iii. With respect to the Agency's retaliation motive against Dr. McLean for his Malik AIB testimony, as discussed *infra*, Dr. McLean affirmatively demonstrated that the Agency treated similarly situated non-whistleblowing surgeons differently. The Agency failed to demonstrate that it treated similarly situated non-whistleblowers similar to the way it treated Dr. McLean because the Agency lack a comparative similarly situated individual (*see infra*).

b. <u>Dr. McLean's 2010 OSC Complaint:</u>

i. **PFC for Dr. McLean's OSC complaint**:

1. Mr. Pines has testified that the Denver MSPB has already ruled (DE-1221-22-0142-W-1-3) that Dr. McLean has established two non-frivolous whistleblower retaliation cases based on his 2010 OSC complaint and his 2012 Malik AIB testimony. Exhibit 10(a) at page 32 lines 10 to 22.

2. To establish a non-frivolous claim, a whistleblower must demonstrate that "(1) he engaged in whistleblowing activity by making a protected disclosure; and (2) the disclosure was a contributing factor in the agency's decision to take or fail to take a personnel action." *Skarada v. Department of Veterans Affair*, 2022 MSPB 17 at ¶6 *citing Yunus v. Department of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001); *Bradley v. Department of Homeland Security*, 123 M.S.P.R. 547, ¶ 6 (2016).

---

[11] Dr. McLean's Malik AIB Speaking points (Exhibit 15 KK) became part of Dr. McLean's AIB testimony (Exhibit 15 JJ) by agreement with the AIB chair, by Dr. McLean's signing statement, and by physical incorporation. Exhibit 15 Memorandum on the *Carr* Factors at page 99 of 107 to 100 of 107.

3. Because the MSPB has already ruled that each of Dr. McLean's protected disclosures, (2010 OSC complaint and his 2012 Malik AIB testimony) formed the basis for a non-frivolous whistleblower complaint, the MSPB has already found that in response to Dr. McLean's two protected disclosures, the Agency took two covered actions; and the protected disclosures were contributing factors to Agency's decision to take those covered actions.[12]

4. The only PFC element not found in a non-frivolous whistleblower complaint concerns the decision-maker's knowledge of the protected disclosure.

5. Director McKee had knowledge of Dr. McLean's protected disclosure when she appointed him to an FPPE:

a. Director McKee's actual knowledge of Dr. McLean's 2010 OSC complaint was demonstrated in a declaration provided by Eastern Kansas' Title 38 Union President. Exhibit 15 N; *see also* Exhibit 15 Memorandum on the PFCs page 27 of 52 at ¶ 15.

b. Director McKee also had constructive knowledge of Dr. McLean's 2010 OSC complaint:

i. The Deputy Chief of Staff ("DCOS") attempted to appoint Dr. McLean to an FPPE and suspended Thoracic Surgery -both taken prior to the conclusion of the OSC's investigation -were without factual grounds to support the taking such an action. Exhibit 15 at 28 of 52. The only reason for such conduct was the DCOS's retaliatory motive. Because of the DCOS's proximity to Director McKee, the Director had constructive knowledge of Dr. McLean's 2010 OSC complaint.

ii. The chair of the Administrative Investigatory Board ("AIB") that investigated Dr. McLean, and the person who allegedly made the recommendation to appoint Dr. McLean to an FPPE, concealed the fact that Dr. McLean had testified before the 2011 AIB that he had filed a complaint with the OSC. Exhibit 17 at page 94 of 139.

ii. ***Carr* Factor Analysis for Dr. McLean's 2010 OSC complaint**:

1. Factor 1: The Strength of the Agency's case for appointing Dr. McLean to an FPPE was seriously undermined by:

---

[12] Here are the specifics: For the 2010 OSC complaint: OSC disclosures are protected (5 U.S.C. §2302 (b)(9)(C); an appointment is a defined cover action (Id. at (a)(2)(A)(i); and the protected disclosure was a contributing factor because Dr. McLean appointment occurred only eleven months after his OSC complaint; and during that time, the Dr. McLean was investigated and subjected to two PSBs. For his Malik AIB testimony: Disclosures concerning substantial and specific harm are protected (Id. at §2302 (b)(8); a removal is covered personnel actions (Id. at (a)(2)(A)(iii); and the protected disclosure was a contributing factor because Dr. McLean removal occurred twenty-three months after his Malik AIB testimony; and during those twenty-three months, the Dr. McLean at least three PSBs, one prior removal, and DAB.

a. The Agency's failure to consider exculpatory evidence. Exhibit 15 Memorandum on the *Carr* Factors at page 10 – 11 (iii and 4).

b. Because Director McKee had been named a wrongdoer in Dr. McLean's OSC complaint, she had signification COIs. Id. at page 11(e) and at pages 12 -16.

c. The PSB that allegedly adopted the 2011 AIB's recommendations to appoint Dr. McLean to and FPPE could not have possibly reviewed the AIB's report, which did not come into existence until two weeks after the AIB deliberated. Id. at 15-18

d. After realizing that its documentation to appoint Dr. McLean to an FPPE was flawed, the Agency significantly changed its justification for appointing Dr. McLean to an FPPE. Id. at 16-18.

2. Factor 2: The evidence of retaliatory motive cannot possibly be rebutted by the Agency with clear and convincing evidence, includes, but is not limited to:

a. The government's own data demonstrates that employees who files a complaint with the OSC are ten times more likely to be subjected to a major disciplinary action during the next year than a non-whistleblower. Id. at 21 *citing* GAO: *Actions Needed to Address Employee Misconduct Process and Ensure Accountability.* GAO-18-137.

b. Dr. McLean was placed on administrative leave the day after the OSC closed its investigation. Exhibit 15 Memorandum on the *Carr* Factors at 33-34.

c. The 2011 AIB's only affirmative finding was that Dr. McLean had manifested a single episode of disruptive behavior; and yet the Agency appointed Dr. McLean to a clinical FPPE. Id. at page 23 - 28.

d. For Dr. McLean, the terms of the FPPE established

i. impossible goals to achieve; and a

ii. hostile workplace. Id. at 25-26.

e. After Dr. McLean filed his 2010 OSC complaint, the DCOS preemptively and without justification order the Chief of Surgery to appoint Dr. McLean to an FPPE. Id. at 29 – 31.

f. Dr. McLean was subjected to "heighten scrutiny" and targeted for removal. Id. 36-37; *see also* Exhibit 15 D.

3. Factor 3: ***It is impossible for the Agency to demonstrate that it treated non-whistleblowers similar to Dr. McLean.***

a. The Agency placed Dr. McLean on administrative leave prior to appointing him to an FPPE.

b.    Dr. McLean affirmatively demonstrated that he was treated differently than non-whistleblowing surgeons in the same hospital. Id. 39-42.

c.    The Agency claimed that it treated non-whistleblowers similarly to Dr. McLean because it had placed a non-surgeon, who worked in a different hospital, on administrative leave after the internist had been criminally charged with a felony that was not directly related to patient care. (The internist had engaged in the extracurricular exchange of medications for sex with a former patient.) Exhibit 18 at 16 of 139 to 17 of 139. Because this internist is non-similarly situated to Dr. McLean, the Agency failed to rebut this *Carr* Factor 3.

c.    <u>Dr. McLean's Malik AIB testimony:</u>

i.    **PFC for Dr. McLean's testimony before the Malik AIB:**

1.    Mr. Pines has testified that the Denver MSPB has already ruled (DE-1221-22-0142-W-1-3) that Dr. McLean has established two non-frivolous whistleblower retaliation cases based on is 2010 OSC complaint and his 2012 Malik AIB testimony. Exhibit 10(a) at page 32 lines 10 to 22.

2.    To establish a non-frivolous claim, a whistleblower must demonstrate that "(1) he engaged in whistleblowing activity by making a protected disclosure; and (2) the disclosure was a contributing factor in the agency's decision to take or fail to take a personnel action." *Skarada v. Department of Veterans Affair*, 2022 MSPB 17 at ¶6 citing *Yunus v. Department of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001); *Bradley v. Department of Homeland Security*, 123 M.S.P.R. 547, ¶ 6 (2016).

3.    Because the MSPB has already ruled that each of Dr. McLean's protected disclosures, (2010 OSC complaint and his 2012 Malik AIB testimony) formed the basis for a non-frivolous whistleblower complaint, the MSPB has already found that in response to Dr. McLean's two protected disclosures, the Agency took two covered actions; and the protected disclosures were contributing factors to Agency's decision to take those covered actions.

4.    The only element in a PFC not covered by a finding of a non-frivolous whistleblower complaint concerns the decision-maker's knowledge of the protected disclosure.

5.    Director Klopfer testified during the 2013 and 2014 Disciplinary Advisory Board ("DAB") hearings that he knew of Dr. McLean's testimony concerning Drs. Van Landingham's and Montecino's substantial and specific patient harm prior to removing him. Exhibit 15 Memorandum on the PFCs at pages 46 of 52 to 48 of 52.

ii. ***Carr* Factor Analysis for Dr. McLean's testimony before the Malik AIB:**

1. Factor 1: For the reasons below, the Agency cannot prevail on the strength of its case for removing Dr. McLean by clear and convincing evidence because:

   a. By returning Dr. McLean to duty in 2013, the Agency tacitly admitted that its case for removal was fundamental flaw because of its denial of Dr. McLean's due process rights; and many of the due process rights were not cured prior to Dr. McLean's 2014 removal. Exhibit 15 Memorandum on the *Carr* Factors at page 48 of 107 to 49 of 107.

   b. Because Dr. McLean was removed pursuant to 38 U.S.C. § 7422(d) the 2014 DAB did not consider the Agency's significant COIs or retaliatory motive. Id. 50 of 107 to 51 of 107.

   c. Dr. Van Landingham's public remarks demonstrated the Dr. McLean's removal was preordained. Id. at 51 of 107 to 52 of 107.

   d. All of the adverse evidence used by Agency to justify Dr. McLean's removal can be traced to evidence provided by Drs. Chhahira, Van Landingham, and Montecino. Id. at 56 of 107 to 58 of 107. The significant COIs of these doctors should have precluded them from judging Dr. McLean's clinical skills or behavior. Id. at 52 of 107 to 55 of 107.

   e. After testifying before the Malik AIB, but before the May 24, 2012 PSB where Dr. McLean was denounced by Drs. Van Landingham and Montecino, Dr. McLean had observed changes in these doctors' behavior that demonstrated that his AIB testimony had been leaked. Id. at 58 of 107 to 60 of 107.

   f. The proctors' notes from Dr. McLean's FPPE where not created contemporaneous with the Dr. McLean's cases. Id. at 60 of 107 to 62 of 107.

   g. The Agency never defined the standard it used to judge Dr. McLean. Id. at 62 of 107 to 71 of 107.

   h. During his 2021 deposition, Dr. Haller, the former Chief of Surgery at the Eastern Kansas VA Healthcare System, rebutted (line-by-line) all of Drs. Van Landingham's and Montecino's criticisms of Dr. McLean's surgical skills as being subjective and nitpicky; and he testified that Dr. McLean had met the standard of care for each of the twenty-two specifications that the Agency alleged were evidence of Dr. McLean's incompetence. Exhibit 15 D at pages 88-129.

2. Factor 2: Evidence that the Agency cannot rebut its retaliatory motive by clear and convincing evidence includes:

   a. The Agency's collective actions demonstrate that after Dr. McLean filed his OSC complaint he was targeted for removal. Id. at 72 of 107 to 76 of 107.

   b. Dr. Van Landingham's conduct is the best evidence he testified falsely against Dr. McLean during the May 24, 2012 Professional Standards Board ("PSB"). Id. at 77 of 107 to 79 of 107.

   c. The Agency modified the terms of Dr. McLean's FPPE to its advantage. Id. at 79 of 107 to 80 of 107.

   d. After admitting that he was aware of Dr. McLean's testimony concerning the substantial and specific harm to patients cause by two surgeons, Director Klopfer admitted that he took no action to investigated Dr. McLean's claims. Id. at 82 of 107 to 84 of 107.

   e. Director Klopfer denied Dr. McLean his right to a meaningful hearing. Id. at 85 of 107 to 86 of 107.

   f. The Agency demonstrated retaliatory motive when it failed to consider detailing Dr. McLean to comp and pen. Id. at 89 of 107 to 90 of 107.

   g. The Agency violated its own document retention policy with respect to Dr. McLean. Id. at 91 of 107 to 22 of 107.

   h. In violation of its own policy, the Agency failed to report Dr. McLean to the Kansas State Board of Healing Arts. Id. at 93 of 107 to 95 of 107

   i. The sheer volume of procedure used against Dr. McLean in 2011 – 2014 is evidence of retaliatory intent. Id. at 95 of 107 to 96 of 107.

3. Factor 3: *It is impossible for the Agency to demonstrate that it treated non-whistleblowers similar to Dr. McLean.*

   a. The Agency placed Dr. McLean on summary suspension and ultimate removed him solely on grounds of how he provided patient care.

   b. Dr. McLean affirmatively demonstrated that he was treated differently than non-whistleblowing surgeons in the same hospital. Id. at 98 of 107 to 102 of 107.

   c. The Agency claimed that it treated non-whistleblowers similarly to Dr. McLean because it removed a non-surgeon, who worked in a different hospital, for insubordination. This internist's removal had nothing to with patient care. Unlike Dr. McLean, this non-surgeon had not been subjected to an FPPE prior to his removal. Exhibit 18 at 48 of 139 to 49 of 139. Because this internist was not

similarly situated to Dr. McLean, the agency cannot demonstrate it treated non-whistleblowers similar to Dr. McLean.

11. Damages:

a. Because Dr. McLean seeks only Summary Judgment on the liability issues for Count I of the Amended Complaint, Dr. McLean does not seek to prove a specific dollar amount in damages. For the purposes of this Motion, Dr. McLean seeks only to prove that he sustained non-speculative damages due to Mr. Bruce's negligence prior to filing this case.

b. After Dr. McLean was placed on summarily suspension on May 31, 2012, he never practiced medicine again. Dr. McLean's 2014 removal became final in December 2014; after which he moved his Kansas medical license from "Federal Active" to "Exempt."[13] When a Kansas medical licensee has been on "Exempt" status for more than three years, the licensee is no longer eligible to return to "Active" of "Federal Active" status without additional training. Exhibit 8; *see also* Exhibit 9. Given Dr. McLean's age (67 years), taking further residency training in surgery (five years) is not a realistic option. Accordingly, as early as 2015, but no later than 2018,[14] Dr. McLean lost his ability to be actively engaged in the practice of medicine. Plaintiff told the Defendant in 2014 that he was unemployed; and repeated told the Defendant that he was working as a non-physician from 2015 to 2020. The Defendant knew Dr. McLean was not actively practicing medicine.

c. For twenty years, it has been common knowledge that hospitals will not hire surgeons who do not have an "Active" Board Certification status from the American Board of Surgery.[15] My Board Certification in Surgery had to be renewed every 10 years. (*See* Mark A. Malangoni and Christine D. Shiffer: *The American Board of Surgery Maintenance of Certification Program: The first 10 years*. Bulletin of the American College of Surgeons. July 1, 2015; HTTPS://BULLETIN.FACS.ORG/2015/07/THE-AMERICAN-BOARD-OF-SURGERY-MAINTENANCE-OF-CERTIFICATION-PROGRAM-THE-FIRST-10-YEARS/.) To sit for recertification in general surgery, I would have to produce a log of my surgical cases for

---

[13] In Kansas to hold an Active medical license, a physician must annually produce proof of medical malpractice coverage. K.S.A. *40-3402*(a). Not working as surgeon, Dr. McLean could not afford the maintenance of an Active medical license because he could not afford the malpractice premium.

[14] This number is variable because it depending on whether you count "being no longer actively involved in surgery" from the time Dr. McLean performed his last surgical procedure or when he was formally removed and could not long perform surgery.

[15] *For example, see* Roswell Park: Is Board Certification Overrated? https://www.roswellpark.org/partners-in-practice/white-papers/board-certification.

the most recent twelve-month period and have the support of my department of surgery chair. Id. Having not performed any surgical operation since 2012, my certification in Surgery lapsed in 2020; and I am no longer eligible to sit for recertification. Accordingly, I am now caught in a Catch-22: Because no one will hire a non-Board Certified surgeon, I cannot obtain a twelve-month surgical case log to sit for recertification. *The Defendant knew that I was to be decertified.* Exhibit 2 at July 9, 2019.

    d.    Between 1999 and 2012, Dr. McLean provided expert witnesses services and served as a consultant to a number of well-known organization (*e.g.*, the World Health Organization, CMS, and Food and Drug Administration). To serve as an expert witness or to provide consultative reports, Dr. McLean had to be actively engaged in the practice of surgery and not be impeachable.

    i.    As discussed above, after 2018, Dr. McLean was no longer capable of holding an active medical license; so, by 2018, Dr. McLean could no longer work as an expert witness or consultant.

    ii.    I have never denied that I have been removed from the VA for cause. If as an expert witness I was asked about my removal from the VA, I would be easily impeached.

    e.    Due to the loss of my ability to actively practice medicine and Board Certification, I sustained monetary damages (*e.g.*, loss of income and pension benefits.)

    f.    The OSC, citing latches, declined to investigate my complaint. Exhibit 11. In declining to investigate Dr. McLean's 2020 OSC claim because of latches, Dr. McLean missed out on the OSC's investigatory power. Had the OSC investigated Dr. McLean's claim (in say 2016), its investigation into the Agency's wrongdoing could have only made Dr. McLean's whistleblower claim stronger by uncovering documents that that the Agency never produced or have been destroyed.[16]

WHERETOFORE, the Plaintiff has demonstrated that the incontrovertible facts in this case demonstrate that the Defendant is liable for his professional negligence in Count I, Dr. McLean respectfully requests the Court to grant him Summary Judgment on Count I.

---

[16] In 2020, the VA stated that the only responsive document in its possession, custody, or control, to Dr. McLean's subpoena for document concerning his 2014 removal was a copy of the 2014 Disciplinary Advisory Board transcript. ECF 129. Pursuant to the Agency's document retention policy, all other documents related to Dr. McLean's 2014 removal had been destroyed. Id. Had Mr. Bruce filed a claim in, say, 2018 many documents in the Agency's file concerning Dr. McLean would have still been in existence.

## Declaration

I declare under penalty of perjury of the laws of the United States, 28 U.S.C. § 1746, that the forgoing statement a true to the best of knowledge and belief.

## Certificate of Service

I hereby certify that this pleading was served upon Mr. Meyers via his email.

Respectfully submitted August 3, 2023, by:

Thomas R. McLean, Plaintiff *pro se*
4970 Park
Shawnee, KS, 66216
913-525-5526
tmcllc1999@gmail.com